**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **IN RE: MARK C. HOLLON,** | ) | |
| | ) | **CHAPTER 13** |
| | ) | **CASE NO. 06-31264-DHW** |
| **Debtor(s).** | ) | |

## MOTION TO LIFT THE AUTOMATIC STAY

Comes now American Home Mortgage Servicing, Inc. ("AHMSI") as servicing agent for Deutsche Bank National Trust company, as Trustee in trust for the benefit of the Certificateholders for Ameriquest Mortgage Securities Trust 2004-R9, Asset-Backed Pass-Through Certificates, Series 2004-R9 ("Deutsche Bank") and moves this Court, pursuant to 11 U.S.C. § 362, for an order lifting the automatic stay on certain property which is currently subject to an interest held by Deutsche Bank and shows unto the Court the following:

1. Deutsche Bank is a secured creditor of the above-named Debtor(s) being the holder and owner of a certain note in the original principal amount of $110,500.00, executed by Mark C. Hollon and payable to the order of Ameriquest Mortgage Company and is secured by a mortgage on certain real estate located in Autauga County, Alabama, as evidenced by the attached instruments.

2. AHMSI avers that Debtor(s) has/have been in default in the payment of the post-petition installments due Deutsche Bank, as assignee of said note and mortgage, pursuant to the terms of said note, since August, 2009 and thereafter.

WHEREFORE, AHMSI respectfully requests that the Court issue an order stating that the automatic stay is lifted pursuant to 11 U.S.C. § 362, and said property be released to AHMSI/Deutsche Bank so as to permit AHMSI/Deutsche Bank to liquidate its security and to apply the proceeds to said indebtedness secured thereby, and to such other relief to which it may be entitled.

/s/ Michael W. Lindsey
By:______________________________

MICHAEL W. LINDSEY, ESQ.
OF COUNSEL: Jauregui Law Firm, LLC
Attorney for American Home Mortgage Servicing, Inc.
3829 Lorna Road, Suite 322
Hoover, Alabama 35244
(205) 988-8888

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by United States mail, postage prepaid and properly addressed, or by electronic mail, on this the 28th day of October, 2009, to-wit:

Vonda S. McLeod, Esq.
Attorney for Debtor(s)
P. O. Box 201
Montgomery, AL 36101

Curtis C. Reding
Chapter 13 Trustee
Middle District of Alabama
P. O. Box 173
Montgomery, AL 36101

Mark C. Hollon
2126 County Road 61
Prattville, AL 36067

/s/ Michael W. Lindsey

MICHAEL W. LINDSEY

# FIXED RATE NOTE

| February 25, 2004 | Orange | CA |
|---|---|---|
| [Date] | [City] | [State] |

2126 County Road 61, Prattville, AL 36067
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ **110,500.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.950 %.**

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on May **1, 2004.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. **If,** on **April 1, 2034**, I still owe amounts under this Note, **I** will pay those amounts in full on that date, which is called the "Maturity Date."

**I will make my monthly payments at: 505 City Parkway West, Suite 100, Orange, CA 92868**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payments will be in the amount of U.S. **$806.97.**

**4. BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time without a penalty.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials: MCG ____ ____ ____

02/25/2004 2:25:54 PM

200-1UNIV (Rev. 7/03)

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

Mark C. Hollon _______________ (Seal)
Borrower: Mark C. Hollon
SSN: [redacted]

_______________ (Seal)
Borrower:
SSN:

_______________ (Seal)
Borrower:
SSN:

_______________ (Seal)
Borrower:
SSN:

Page 1 of 18
InstrumentID: 121465
RLPY Book: 2004 Page: 2292
3/17/2004 9:05:59 AM
Autauga County , AL
Alfred Q. Booth
Judge of Probate
Recording Fee: $62.00
Taxes: $165.75
Total: $227.75

Prepared by
~~Return To:~~

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Return to

Heritage Title, LLC
1821 Tin Valley Circle, Suite A
Birmingham, AL 35235
(205) 661-6667

[Space Above This Line For Recording Data]

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated February 25, 2004 , together with all Riders to this document.
(B) **"Borrower"** is Mark C. Hollon, An Unmarried Man .

Borrower is the mortgagor under this Security Instrument.
(C) **"Lender"** is Ameriquest Mortgage Company

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3001 1/01

02/25/2004 2:25:54

AM6AL (0311)
Page 1 of 15 Initials: MCH
VMP Mortgage Solutions (800)521-7291

0000006976506303011316O1

Lender is a Corporation
organized and existing under the laws of Delaware .
Lender's address is 1100 Town and Country Road, Suite 200 Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated February 25, 2004 .
The Note states that Borrower owes Lender one hundred ten thousand five hundred and 00/100 Dollars (U.S. $ 110,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2034 .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: MCS

02/25/2004 2:25:54

0000006976506303011316O2

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Lender, with power of sale, the following described property located in the County of AUTAUGA :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

Parcel ID Number: 09-09-31-0-000-011-003 which currently has the address of 2126 County Road 61 [Street]
Prattville [City], Alabama 36067 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials: MCB



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in** AUTAUGA **County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____________________ _____________________(Seal)
Mark C. Hollon -Borrower

_____________________ _____________________(Seal)
-Borrower

_____________________(Seal) _____________________(Seal)
-Borrower -Borrower

_____________________(Seal) _____________________(Seal)
-Borrower -Borrower

_____________________(Seal) _____________________(Seal)
-Borrower -Borrower

STATE OF ALABAMA, Autauga County ss:

On this 25th (Day) day of February (Month), 2004 (Year) before

me a Notary Public in and for said county and in said state, hereby certify that

Mark C. Hollon

whose name(s) is/are signed to the foregoing conveyance, and who is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this 25th day of February 2004

My Commission Expires: 9-23-07 Elizabeth [signature]

Notary Public

Prepared By:
Trina Knadler
800 Concourse Parkway, # 130,Birmingham, AL 35244

Exhibit "A"

Begin at a point where the West line of the East half of the Southwest quarter of Section 31, Township 19 North, Range 16 East, intersects the South boundary of the Hollon Spur Road; thence along said Hollon Spur Road North 68 degrees 04 minutes 32 seconds East, 100.18 feet to a point; thence continue along said road North 59 degrees 44 minutes 28 seconds East; 197.00 feet to an iron pin; thence leaving said Hollon Spur South 28 degrees 00 minutes 00 seconds East, 399.81 feet to an iron pin; thence South 65 degrees 00 minutes 02 seconds West, 456.54 feet to an iron pin; thence North 02 degrees 38 minutes 07 seconds West, 418.71 feet to the point of beginning.

Said described property lying and being situated in the Southwest Quarter of Section 31, Township 19 North, Range 16 East, Autauga County, Alabama. Containing 3.350 acres more or less, According to that certain survey by W. Darrell Hyatt, PLS, ALA, Reg No 16673 Dated March 20, 1996.